**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**COREEN J. RICHARDSON**                                                     **PLAINTIFF**

                                                                    **NO. 4:20CV33-DMB-JMV**

**ANDREW SAUL,
COMMISSIONER (*SOCIAL SECURITY
ADMINISTRATION*), ET AL.**                                              **DEFENDANTS**

### REPORT AND RECOMMENDATIONS

Pending before the Court is Defendants' motion to dismiss [19] filed pursuant to Rule 12(b)(1) and 12(h)(3) of the *Federal Rules of Civil Procedure*. The matter has been referred to the undersigned United States Magistrate Judge for issuance of a report and recommendations. And, having duly considered the submissions of the parties, the record, and the applicable law, it is my recommendation that the motion be granted.

### Background

On December 15, 2016, Plaintiff applied for widow's insurance benefits (WIB) at the Social Security Administration's ("agency") field office in Clarksdale, Mississippi. By notice dated December 26, 2016, the agency informed Plaintiff it had approved her application and that she would begin receiving WIB payments beginning February 2017, the month she became 60 years of age.[1]

Over a year after the start of her WIB payments, Plaintiff, through her counsel, inquired

---

[1] On January 4, 2018, Plaintiff applied for disability insurance benefits (DIB) based on her own earnings. The agency denied this application at the initial and reconsideration levels; but in a July 2019 decision, an administrative law judge ("ALJ") found Plaintiff was disabled. By notice dated July 21, 2019, the agency informed Plaintiff that it had approved her DIB application, with DIB payments retroactive to April 2018.

at an agency office in Austin Texas whether she had received any overpayment. By letter dated May 11, 2018, the agency informed Plaintiff its records did not indicate an overpayment. On July 19, 2018, however, the agency sent Plaintiff written notice, informing her she had exceeded the earnings limit during 2017 and that the agency had assessed a $5,487.00 overpayment of her WIB. According to the July 19, 2018 notice, Plaintiff had the right to appeal the overpayment determination and/or request a waiver of recovery of the overpayment. Additionally, Plaintiff was informed that if she requested reconsideration and/or waiver within 30 days, the overpayment would not be recovered until the case had been reviewed.

On or about August 6, 2018, within the 30-day window for halting recovery pending review, Plaintiff filed a Request for Waiver of Overpayment Recovery or Change in Repayment Rate with the Clarksdale agency office. By letter dated August 31, 2018, the agency informed Plaintiff it would withhold her full monthly benefit payment of $987.00 beginning September 2018 and continuing through January 2019. It further explained that a partial payment would be withheld in February 2019 and that full payment of her WIB would resume in March 2019. After further inquiry by Plaintiff's counsel regarding the status of Plaintiff's waiver request, however, Plaintiff received a revised overpayment schedule dated September 5, 2018, informing her that her regular WIB payments would resume in full that month.

Later, on or about January 30, 2019, Plaintiff received a notice from the agency that her request to waive repayment of her overpayment had been denied. The notice informed Plaintiff of her appeal rights, including the right to attend a personal conference, and notified her a personal conference had been scheduled for February 8, 2019, with Defendant Tamarra Mitchell.

Plaintiff, along with her attorney, attended the personal conference with Defendant Mitchell at the Clarksdale field office on February 8, 2019. After the personal conference, Defendant Mitchell denied Plaintiff's request to waive repayment of her overpayment in a reconsideration notice dated February 15, 2019.[2]

Plaintiff and her attorney returned to the Clarksdale field office on April 8, 2019, at which time Plaintiff's attorney informed Defendant Mitchell that Plaintiff had not received a copy of the reconsideration decision denying her waiver request. Defendant Mitchell gave Plaintiff a copy of the reconsideration denial at that time.[3] Plaintiff submitted a form by hand-delivery to the Clarksdale field office on May 23, 2019, requesting a hearing on her request for waiver of the overpayment.

In July 2019, the agency approved Plaintiff's application for DIB. Then, the agency transferred the pending overpayment from Plaintiff's WIB to her DIB. Because of that transfer, the agency's automatic system started the collections process on Plaintiff's DIB. From this point, the amended complaint chronicles Plaintiff's and her counsel's communications with various agency employees in attempts to halt the overpayment recovery and enforce her appeal rights.[4]

---

[2] Plaintiff alleges she did not receive a copy of the February 15 notice of denial of her request for waiver, however, until after she returned to the Clarksdale Field Office on April 8, 2019, to inquire why she had received an April 3, 2019 notice that stated "overpaid Social Security benefits" in the amount of $4,472.00 would be withheld through September 2019.

[3] The February 15 reconsideration denial decision had been prepared by and approved in part by Defendant Mitchell. *See* Waiver Determination, attached to Defs.'s Mot. to Dismiss [19-9]. The notice provided Plaintiff had 60 days from the date she received that notice to request review of the decision by an ALJ. According to Plaintiff, during the April 8 meeting, counsel for Plaintiff and Ms. Mitchell agreed Plaintiff had until June 8, 2019, to file a request for a hearing before an ALJ.

[4] Of note, on January 6, 2020, Plaintiff hand-delivered a copy of the prior hearing request to the Clarksdale office.

Plaintiff filed her initial complaint [1] in this Court on February 26, 2020. Defendants filed a motion to dismiss for lack of jurisdiction [16] on May 9, 2020. Plaintiff filed an amended complaint [18] on May 15, 2020.[5] The amended complaint names as defendants Andrew Saul, the Commissioner of the Social Security Administration (presumably in his official capacity),[6] and three employees of the agency, Alice Barbieri, Tamarra Mitchell, and Jason White. Defendants filed a motion to dismiss Plaintiff's amended complaint for lack of jurisdiction [19] on May 27.

In the amended complaint, Plaintiff asserts the following grounds for this Court to exercise subject-matter jurisdiction over this case:

> 53. This matter concerns a federal question and federal parties. Under 28 U.S. Code § 1331, the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. Secondly, under 28 U.S. Code § 2675, after failure of the federal agency to make final disposition within six months, this Court then has jurisdiction. Further, the Social Security Act of 42 U.S. Code § 405 grants benefits' recipients the right to seek review by a district court.

On August 7, 2020, the agency notified Plaintiff that a telephonic hearing before an ALJ on her waiver request had been set for August 21, 2020.[7] *See* Notice of Hearing attached as an exhibit to Defs.'s Notice of Filing Notice of Hearing [31]. And, on August 21, 2020, an ALJ conducted a telephonic hearing in response to Plaintiff's May 23, 2019 written request for a hearing. *See* Notice of Decision attached as an exhibit to Defs.'s Notice of Filing of Final

---

[5] Though still pending on the docket, the filing of Plaintiff's amended complaint mooted Defendants' initial motion to dismiss.

[6] Official capacity suits against federal employees are treated as suits against the United States. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985); *Turner v. Houma Mun. Fire and Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000).

[7] The agency had previously scheduled a hearing for July 23, 2020. Mitchell Dec. ¶ 15, attached to Defs.'s Mot. to Dismiss [19-1]. Plaintiff contends this scheduling was in reaction to the filing of this lawsuit. *See* Pl.'s Br. 5. One week before the prior setting, however, the hearing was postponed. Pl. Supp. Br. 2 [29].

Administrative Decision [34]. By Notice of Decision-Fully Favorable dated August 31, 2020, Plaintiff was notified that recovery of the overpayment had been waived and that she was not liable for $5,487.00 during the period of February 1, 2017 to June 1, 2017. *Id.*

<u>**Law and Analysis**</u>

Federal district courts are courts of limited subject-matter jurisdiction "and cannot entertain cases unless authorized by the Constitution and legislation." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). "Accordingly, there is a presumption against subject-matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Id.* Because Plaintiff has sued a federal official and employees of a federal agency, she must overcome the litigation bar imposed by sovereign immunity. The United States, as a sovereign, is immune from suit unless it consents to be sued. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S. Ct. 1349, 1351, 63 L. Ed. 2d 607 (1980). Thus, the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit. *United States v. Testan*, 424 U.S. 392, 399, 96 S. Ct. 948, 953–54, 47 L. Ed. 2d 114 (1976). As a result, consent "cannot be implied but must be unequivocally expressed." *Mitchell*, 445 U.S. at 538, 100 S. Ct. 1349. Accordingly, statutes purporting to waive the United States' sovereign immunity are strictly construed. *See id.*

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction. A motion to dismiss under Rule 12(b)(1) is characterized as either facial or factual. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). A facial attack is based solely upon the complaint itself, whereas "[a] 'factual attack' . . . challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (citation omitted). When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1) that does not

implicate the merits of the plaintiff's cause of action, the district court has substantial authority

"to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and

"the existence of disputed material facts will not preclude the trial court from evaluating for itself

the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)

(citation omitted).

"Courts[, consequently,] may dismiss for lack of subject-matter jurisdiction on any one of

three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed

facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's

resolution of disputed facts." *Clark v. Tarrant Cnty.,* 798 F.2d 736, 741 (5th Cir. 1986) (citing

*Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981)). The plaintiff bears the burden of

demonstrating that subject-matter jurisdiction exists. *See Paterson v. Weinberger,* 644 F.2d 521,

523 (5th Cir. 1981). A court's dismissal of a case for lack of subject-matter jurisdiction is not a

decision on the merits, and the dismissal does not necessarily prevent the plaintiff from pursuing

the claim in the same forum or in another. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th

Cir. 1977).

### A. Count I of the Amended Complaint, Plaintiff's Due Process and Putative Ultra Vires Claims[8]

---

[8] The ultra vires exception to sovereign immunity provides that "where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions," or "ultra vires his authority," and thus not protected by sovereign immunity. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689, 69 S. Ct. 1457, 93 L. Ed. 1628 (1949). Additionally, where a federal official's actions based on power conferred by statute or order are unconstitutional, the ultra vires exception may apply. *See id.* To fall within the ultra vires exception to sovereign or governmental immunity, a plaintiff must "do more than simply allege that the actions of the officer are illegal or unauthorized." *Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011). Rather, the complaint must allege facts sufficient to establish that the officer was acting "without any authority whatever," or without any "colorable basis for the exercise of authority." *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)). In this case Plaintiff does not use the term ultra vires in the amended complaint but alleges the following:

> 61. When Defendants blocked Coreen from exhausting the administrative remedies, Defendants acted beyond their statutory powers, thus waiving sovereign immunity.
> 62. Even if Defendants acted within their statutory power, their actions were constitutionally void. Defendants did not follow their own established administrative

The first count of Plaintiff's amended complaint asserts in relevant part:

55.     Under § 204(b) of the Social Security Act ("Act"), Coreen was entitled to a pre-recoupment hearing.

56.     The Due Process Clause of the Fifth Amendment requires that a hearing takes place if a benefits' recipient requests a waiver of the overpayment. Otherwise, there will be a deprivation of a property right, i.e., the social security benefits.

57.     SSA scheduled a personal conference with Tamarra for February 8, 2019 at 11:30 a.m. as a result of Coreen filing a waiver request.

58.     Instead of receiving a final decision from an impartial SSA agent, Coreen received a final decision from her longtime claim representative, Tamarra. At the April 8, 2019 meeting with Tamarra, Tamarra stated that she made the final decision following the personal conference that led to Coreen receiving the April 3, 2019 letter (see Exhibit 9), setting out the impending withholdings. As allowed under the Act, the benefits' recipient can seek further review from an administrative law judge; this is the next step before receiving review by this Court.

59.     Specifically, under § 205(g), a benefits' recipient may seek review by a federal court following a reconsideration, a hearing by an ALJ, and a review by the appeals council. However, Tamarra single-handedly denied Coreen the opportunity for further due process when not transmitting her request for a hearing by an administrative law judge (ALJ) to the Tupelo SSA office. Essentially, Tamarra blocked, not delayed, Coreen from exhausting the required appeal options to come before this Court. Therefore, Coreen has no other choice but to come to this Court and seek relief.

60.     After Tamarra denied Coreen's waiver request, a denial on the first step appeal option, Coreen took the next step of requesting a hearing by an ALJ, once in writing by hand delivery to Tamarra on or about May 23, 2019, and again on

---

hearing process when not transmitting Coreen's hearing request; thus, Defendants went outside of their statutory powers, effectively waiving their immunity.

Amended Compl. ¶¶ 61-62. In her response brief, Plaintiff adds: "Defendants . . . did not have power via statute to seize Plaintiff's overpayment without following their own administrative remedies, and thus, the seizure was unconstitutional. . . . The Act states that Defendants 'shall' give Plaintiff an opportunity for a hearing . . ." Pl.'s Br. 24 [22]. Plaintiff further contends "the Constitution did not permit [Defendants] to seize the benefits." *Id.* Additionally, she claims "[w]hen Defendant SSA recouped Plaintiff's benefits without giving her a hearing, the Commissioner acted outside of [sic] his statutory authority" and in violation of the Constitution. *Id.* at 25. Plaintiff argues that because these exceptions to sovereign immunity have been met, Defendants are not immune to damages. *Id.* Defendants merely respond that Plaintiff's claims are foreclosed by §§ 405(g)-(h). Defs.'s Br. 12 [20]. I agree for the reasons set out in Section A of this R&R. Alternatively, Plaintiff simply has not established any basis upon which this Court may exercise subject-matter jurisdiction over her putative ultra vires claims. *See* footnote 23.

January 6, 2020 in writing by hand delivery to Alice. When discovering that Defendants began depriving Coreen of her property right, the overpayment recoupment in progress on February 14, 2020 of the benefit amount (then $1596.00 after being declared medically disabled in July 2019), Coreen had no other choice but to request this court to intervene because Tamarra, and then Alice, blocked Coreen from further review by an ALJ as allowed under the Act.

61. When Defendants blocked Coreen from exhausting the administrative remedies, Defendants acted beyond their statutory powers, thus waiving sovereign immunity.

62. Even if Defendants acted within their statutory power, their actions were constitutionally void. Defendants did not follow their own established administrative hearing process when not transmitting Coreen's hearing request; thus, Defendants went outside of their statutory powers, effectively waiving their immunity. Additionally, after Tamarra blocked the first ALJ hearing request on Coreen's claim that she is not responsible for the overpayment, more than six months passed. After six months passed, the decision to not waive the overpayment was deemed a final denial. Therefore, Coreen could seek judicial review.

63. Wherefore, premises considered, Defendants should be held liable to Coreen in the amount of her actual damages and any and all other associated damages, including punitive damages, as proven at trial, and the overpayment recovery should be set aside.

## 1. *Bivens* and *Schweiker v. Chilicky*

Defendants first argue that to the extent Plaintiff attempts to assert a *Bivens* type claim for money damages,[9] in *Schweiker v. Chilicky*, 487 U.S. 412, 424-26 (1988), the U.S. Supreme Court ruled such a claim is not recognized in Social Security cases. Defs.'s Br. 5-6. In her response brief,[10] Plaintiff cites *Bivens* in passing in support of her request that "this Court . . .

---

[9] In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), the Supreme Court created a cause of action for damages against a federal official for violation of constitutional rights, despite the absence of statutory authorization. *Bivens*, 403 U.S. at 397, 91 S. Ct. 1999. *Bivens*, therefore, allows a direct cause of action for money damages under the Constitution where no other method of redress exists. *Id.* Accordingly, a *Bivens* claim is essentially "the federal counterpart to § 1983, which applies to state officials acting under color of state law." *Abate v. S. Pac. Transp. Co.*, 993 F.2d 107, 111 (5th Cir. 1993) (citing *Dean v. Gladney*, 621 F.2d 1331 (5th Cir. 1980)).

[10] References to Plaintiff's brief herein are to Dckt. Entry [22] unless otherwise indicated. References to Defendants' brief are to Dckt. Entry [20] unless otherwise indicated.

grant the necessary relief for Defendants' violation of due process and state laws." Pl.'s Br. 18. Because Defendants seek dismissal only on grounds of want of subject-matter jurisdiction, at first glance they appear to conflate the jurisdictional issue with whether Plaintiff has stated a *Bivens* claim for money damages. However, to the extent it is Defendants' position that Plaintiff's assertion of a *Bivens* action does not confer federal jurisdiction, I agree.

There is no authority for a *Bivens* claim with respect to Plaintiff's claims for money damages against Defendants in their individual capacities for violation of her due process rights and/or for their alleged ultra vires actions. In *Chilicky*, the Supreme Court dealt with one issue: "[w]hether a *Bivens* remedy should be implied for alleged due process violations in the denial of social security disability benefits." *Id.* at 420. In that case, Social Security disability claimants sought judicial review of the Social Security Administration's determinations to terminate Title II disability benefits pursuant to the agency's continuing disability review ("CDR") program. *Id.* at 417. The claimants alleged because defendants had adopted illegal policies that led to wrongful termination of their benefits by state agencies (for example "defendants had [allegedly] improperly accelerated the starting date of the CDR program"), their due process rights had been violated. *Id.* at 418. Though the benefits of at least some of the claimants had been restored through the administrative process before they filed suit, and they had been paid full retroactive benefits, the claimants sought money damages, among other forms of relief, for "emotional distress and for loss of food, shelter, and other necessities proximately caused by . . . denial of benefits without due process" against agency officials in their individual capacities. *Id.* at 417-19. While the court acknowledged that *Bivens* actions for money damages against federal officers had been permitted in some contexts, because of the remedies available under the complex Social Security statutes and regulations, it expressly foreclosed extension of a *Bivens*

action to persons who were improperly denied Social Security benefits resulting from alleged due process violations. *Chilicky*, 487 U.S. at 425–29, 108 S. Ct. at 2468–71 ("In light of the comprehensive statutory scheme[] involved, the harm resulting from the alleged constitutional violation can[not] . . . be separated from the harm resulting from the denial of the statutory right.").

Accordingly, to the extent Plaintiff seeks money damages from Defendants in their individual capacities—based on actions they took under color of federal law as federal employees—for violation of her due process rights, ultra vires or not, her claims fail to state a claim for which relief may be granted. *Cf. Home Health Licensing Specialists, Inc. v. Leavitt*, 2008 WL 4830543 at *8 (N.D. Tex. November 7, 2008) (concluding claim for damages for due process violations in administering the Medicare Act—which was deemed similar in scope and detail to the Social Security Act—foreclosed by *Chilicky* notwithstanding ultra vires allegations). Furthermore, Plaintiff cannot maintain such an action against the agency.[11] *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 486 (1994) (holding *Bivens* action may not be asserted against federal agencies). Nor is a *Bivens* action viable in this case against the Commissioner in his official capacity.[12] *See Williamson v. United States Dep't of Agric.*, 815 F.2d 368, 380 (1987) (noting *Bivens* action only applies against federal officers "in their individual capacities . . . [while t]he United States and its officers in pursuit of their official duties remain protected by sovereign immunity") (citations omitted). Ultimately, there is no *Bivens* action upon which to found federal jurisdiction in this case.

---

[11] At one instance in her brief, Plaintiff asserts she is suing the United States via "its agency, SSA." Pl.'s Br. 26.

[12] Nowhere in her amended complaint does Plaintiff allege any personal wrongdoing by the Commissioner.

### 2. Federal-Question Jurisdiction Under 28 U.S.C. § 1331

As noted above, Plaintiff also invokes the Court's jurisdiction over her claims under 28 U.S.C. § 1331. Defendants argue that to the extent the Court construes Plaintiff's due process claim as some other type of damages claim, it is likewise foreclosed because the United States has not waived its sovereign immunity with respect to such a claim. Defs.'s Br. 6. According to Defendants, "Plaintiff's amended complaint challenges the agency's determinations denying her request to waive her overpayment." *Id.* at 9. The undersigned agrees with this characterization and, therefore, finds § 1331 does not provide a basis for the exercise of subject-matter jurisdiction over Plaintiff's due process and putative ultra vires claims.

The limited statutory waiver of sovereign immunity for Social Security claims is provided for in 42 U.S.C. § 405(g). And, together, 42 U.S.C. §§ 405(g) and (h) provide for a federal court's jurisdictional authority to review the decisions of the agency regarding a claimant's disability benefits. "Section 405(g) sets the terms of judicial review for" decisions on a claimant's disability benefits under Title II and Title XVI. *Smith v. Berryhill*, — U.S. —, 139 S. Ct. 1765, 1772 (2019). It provides, in relevant part, that a claimant may obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party." 42 U.S.C. § 405(g). "Section 405(h) purports to make exclusive the judicial review method set forth in § 405(g)." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 10 (2000). It provides as follows:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as [provided in § 405(g)]. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

11

42 U.S.C. § 405(h). The Fifth Circuit has explained that the second sentence of § 405(h) serves two purposes: it "channels claims challenging certain types of agency decisions . . . into § 405(g)," and it "ensures that § 405(g) is the sole jurisdictional avenue for the channeled claims." *In re Benjamin*, 932 F.3d 293, 300 (5th Cir. 2019). And the third sentence of § 405(h), by its express terms, prohibits a district court from exercising federal-question jurisdiction over claims against the government, the Commissioner, or any federal officer or employee arising under Title II of the Social Security Act. *See Weinberger v. Salfi*, 422 U.S. 749,756-57 (1975) ("On its face, this provision bars district court federal-question jurisdiction over suits . . . which seek to recover Social Security benefits.").

Here, I find Plaintiff's due process and putative ultra vires claims arise under Title II of the Social Security Act because, though the amended complaint seeks consequential and punitive damages for Defendants' "blocking" Plaintiff's access to completion of the administrative remedy process, it also seeks a judgment "setting aside the overpayment recovery." Indeed, if this Court were to set aside the overpayment recovery, Plaintiff would logically be entitled to reimbursement of the benefits the agency recouped. *See Salfi*, 422 U.S. at 760-61 (giving a broad interpretation to the third sentence of 405(h) and concluding the claimants' constitutional claims arose under the Social Security Act because not only did appellees seek to recover Social Security, but it was the Social Security Act that "provide[d] both the standing and the substantive basis for the presentation of their constitutional contentions"). *See also Heckler v. Ringer*, 466 U.S. 602, 614-16, 104 S. Ct. 2013, 2021, 80 L. Ed. 2d 622 (1984) ("Indeed the relief that respondents seek to redress their supposed 'procedural' objections is the invalidation of the Secretary's current policy and a 'substantive' declaration from her that the expenses of BCBR surgery are reimbursable under the Medicare Act."). Therefore, to the extent Plaintiff contends §

1331 provides a pathway to federal subject-matter jurisdiction over her due process and putative ultra vires claims, the argument is debunked by the express language of § 405(h). *See id.* at 761.

### 3. § 405(g) and *Mathews v. Eldridge*

Defendants next argue this Court may not exercise jurisdiction over Plaintiff's claims under § 405(g) because she has not met that section's exhaustion of administrative remedies requirement. Defs.'s Br. 9-12. Plaintiff, on the other hand, essentially contends that pursuant to the United States Supreme Court's holding in *Mathews v. Eldridge,* 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), the need for "prompt resolution" of her due process claim warrants judicial waiver of § 405(g)'s exhaustion requirement. Pl.'s Br. 10-11. Because an ALJ has now reversed the denial of Plaintiff's waiver request, Plaintiff cannot show the need for the "prompt resolution" contemplated in *Eldridge*. And, even if she were able to meet the "prompt resolution" aspect of *Eldridge*, she has failed to establish a second essential requirement for judicial waiver of the exhaustion requirement: a claim collateral to her benefits claim. And, notwithstanding any issue of entitlement to judicial waiver of the exhaustion, exercise of jurisdiction over Plaintiff's due process and putative ultra vires claims is not appropriate because there no longer exists the type of decision reviewable under § 405(g).

As noted above judicial review is available under § 405(g) only after a "final decision" of the Commissioner made after a hearing.[13] In order to meet this finality requirement, first, "a claim for benefits shall have been presented to the Secretary." *Eldridge,* 424 U.S. at 328-29. Second, "the administrative remedies prescribed by the Secretary [must be] exhausted." *Id.*

---

[13] The other two prerequisites for federal court review are (1) that the civil action be commenced within 60 days after the mailing of notice of such decision, or within such additional time as the Secretary may permit, and (2) that the action be filed in an appropriate district court. 42 U.S.C. § 405(g). These two requirements specify a statute of limitations and appropriate venue and are waivable by the parties. *Salfi*, 422 U.S. at 763-764.

These two requirements together ensure that an individual seeking federal judicial relief in a case "arising under" the Social Security Act is doing so, as § 405(g) requires, "after any final decision of the Commissioner of Social Security made after a hearing to which he was a party." *See id*. Ultimately, while the first requirement, presentment, is "'purely' jurisdictional" and cannot be waived by the Secretary in a particular case, the exhaustion requirement may be waived. *Id.*[14]

In this case there is no dispute Plaintiff has "presented" her benefits claim to the agency. Indeed, though Plaintiff did not specifically present her due process and putative ultra vires claims to the agency, *Eldridge* held that § 405(g) demands only that the claimant present a claim for benefits to the agency. *See Eldridge*, 424 U.S. at 328-29.

Next, the Court should consider the waivable element of the finality requirement, exhaustion of administrative remedies.[15] The salient issue here is whether the reconsideration denial of Plaintiff's waiver request was a "sufficiently final decision" with respect to her constitutional claim to satisfy the exhaustion requirement. *See Eldridge*, 424 U.S. at 330. Exhaustion of administrative remedies in this context requires a claimant to take the following

---

[14] To be clear, while the exhaustion requirement is deemed to be "waivable," the Supreme Court has clearly pointed out that it is, nevertheless, a jurisdictional prerequisite. *See Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) ("This court has jurisdiction to review the Secretary's final decision only where a claimant has exhausted her administrative remedies.") (citation omitted), overruled on other grounds, *Sims v. Apfel*, 530 U.S. 103 (2000). *See also Eldridge*, 424 U.S. 319, 326 ("At the outset we are confronted by a question as to whether the District Court had jurisdiction over this suit . . . . The only avenue for judicial review is 42 U.S.C. § 405(g), which requires exhaustion of administrative remedies provided under the Act as a jurisdictional prerequisite."); *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999) (citing *Eldridge* for the proposition that jurisdiction under § 405(g) is determined under a two-prong test that includes a presentment requirement and an exhaustion requirement). Ultimately, *either* exhaustion *or* waiver of exhaustion by the Secretary or the court is required before a district court may exercise jurisdiction over a Social Security case. *See Salfi*, 422 U.S. at 764; *Chambers v. Berryhill*, No. 3:19CV1062-K-BH, 2020 WL 5099829, at *8 (N.D. Tex. Aug. 12, 2020).

[15] "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Salfi*, 422 U.S. at 765. The fact that Plaintiff has now received—during the pendency of this lawsuit—a favorable benefits determination perfectly illustrates the propriety of the policy behind the exhaustion requirement.

steps: (1) present a claim and receive an initial determination and, if dissatisfied, (2) request reconsideration of the initial determination and, if dissatisfied, (3) request a hearing before an administrative law judge and, if dissatisfied with the decision of the administrative law judge, (4) request review by the Appeals Council. *See* 20 C.F.R. § 404.900(a)(1)-(4). An individual obtains a final decision only if she completes the administrative appeals process and receives either: (1) a decision by the Appeals Council, or (2) notice from the Appeals Council that it is denying his request for review. 20 C.F.R. § 404.981. If the individual does not pursue her administrative appeal rights through the administrative review process, the last administrative determination or decision becomes final and binding, and there is no final decision for the purpose of judicial review. 20 C.F.R. §§ 404.905, 404.921, 404.955, 404.981; *Sims v. Apfel*, 530 U.S. 103, 107, 120 S. Ct. 2080, 2083, 147 L. Ed. 2d 80 (2000); *Bowen v. City of New York*, 476 U.S. 467, 472 (1986). In this case Plaintiff merely initiated the third step of the administrative appeal process before filing the instant lawsuit.

In *Eldridge* the Supreme Court reasoned that "cases may arise where a claimant's interest in having a particular issued resolved promptly is so great that deference to the agency's judgment" may be inappropriate. *Id.* at 330. Accordingly, when a plaintiff asserts a constitutional challenge that is (1) "entirely collateral to her substantive claim of entitlement" and (2) she asserts a "colorable claim" that an erroneous termination of benefits would result in damage "not compensable through retroactive payments," a finding is warranted that a less than fully exhausted denial of her claim is a sufficiently "final decision" with respect to her constitutional claim to satisfy the statutory exhaustion requirement. *Id.* The Court deemed the claimant's claim of harm "colorable" in *Eldridge* because it was confronted with a possibility that "full relief . . . [could not] be obtained at a post-deprivation hearing," i.e., the claimant contended that due to his

physical condition and dependency on disability benefits, an erroneous termination would damage him in a way not recompensable through retroactive payments. *Id.* at 331. Ultimately, the Supreme Court held the plaintiff's procedural due process challenge was "entirely collateral to his substantive claim of entitlement." 424 U.S. at 330. The Court reasoned that any ruling on the substantive claim at the post-termination stage would not answer his constitutional challenge. *See id.* at 331.

In this case Defendants argue that because Plaintiff's due process claim is "neither wholly collateral to her benefits nor incapable of being remedied through the administrative process," it does not present a "special case" that is exempt from the exhaustion requirement. Defs.'s Br. 11-12. Plaintiff, on the other hand, completely ignores the issue of whether her claim is "collateral" and focuses instead on the need for "prompt resolution" because she has already been "damaged . . . in a way not fully recompensable through retroactive payments." Pl.'s Br. 10. I agree with Defendants' summation in view of Fifth Circuit and U.S. Supreme Court precedent.

In *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 283–86 (5th Cir. 1999), the plaintiff health care agency alleged that the Department of Health and Human Services Secretary had violated its "right to due process and equal protection" in administrative proceedings for termination of its provider status through the alleged improper and arbitrary enforcement of "various Medicare rules and regulations." *Id.* at 284. The Fifth Circuit found the claim was not collateral though it was "framed in constitutional terms and [sought] compensatory and punitive damages." *Id.* at 285. The court noted the plaintiff sought essentially substantive relief: a reinstatement of its provider status and Medicare payments. *Id.* The court explained that to determine whether the regulations were truly enforced arbitrarily, it "would necessarily have [had] to immerse itself in those regulations and make a factual determination as

to whether [plaintiff] was actually in compliance." *Id.* at 285–86. Consequently, the court concluded subject-matter jurisdiction was lacking under § 405(g) because the plaintiff's claim was not a collateral claim for purposes of exhaustion. *Id.* at 285-86.

The Fifth Circuit reached a different result in *Family Rehab., Inc. v. Azar*, 886 F.3d 496 (5th Cir. 2018). *Family Rehab.* was a Medicare overpayment recoupment case. After the Medicare reimbursement recipient was charged with an overpayment for about $7.6 million, it sought administrative reconsideration, which was denied. *Id.* at 498-500. After it requested an evidentiary hearing, it was notified that recoupment would begin and that an ALJ hearing would not take place for at least three years. *Id*. at 500. It filed an action in the district court having only completed the second stage of the administrative review process, alleging its right to procedural due process had been violated, and sought an injunction to prevent recoupment of overpayments until its administrative appeal was concluded.[16] *Id.* The Fifth Circuit determined the benefits recipient's procedural due process and ultra vires claims were collateral to its substantive benefits claim because it did not demand essentially "substantive relief." *Family Rehab.*, 886 F.3d at 501-503.[17] Instead, the recipient in that case sought "only a hearing before the recoupment of its Medicare revenues." *Id*. at 503.[18] The Court pointed out that "[i]f the court must examine the merits of the underlying dispute, delve into the statute and regulations, or make independent judgments as to plaintiffs' eligibility under a statute" or "if plaintiffs request

---

[16] The district court held it lacked jurisdiction under § 405(g) because the plaintiff failed to exhaust administrative remedies. *Family Rehab.*, 886 F.3d at 500.

[17] The court, citing *Affiliated Prof'l*, made clear that for a claim to be collateral it must not "request relief that would be 'administrative,' i.e., the substantive, permanent relief that the plaintiff seeks or should seek through the agency appeals process." *Family Rehab.*, 886 F.3d at 501.

[18] The court further pointed out that "[i]n its complaint, *Family Rehab.* does not seek a determination that the recoupments are wrong under the Medicare Act" and that their "procedural due-process and ultra vires claims will not require the court to wade into the Medicare Act or regulations." *Family Rehab.*, at 503.

relief that is proper under the organic statute—by requesting that benefits or a provider status be permanently reinstated," the claim is not collateral. *Id.* (citations omitted). The court noted that plaintiffs could, nevertheless, "bring claims that sound only in constitutional or procedural law . . . and request that benefits be maintained *temporarily* until the agency follows the statutorily or constitutionally required procedures." *Id.* (emphasis added) (citations omitted). Ultimately, the court held jurisdiction over the plaintiff's procedural due process and ultra vires claims under § 405(g) had been established. *Id.* at 504.

This case presents a different scenario than the one in *Family Rehab.* and, instead, resembles *Affiliated Prof'l*. In this case, the amended complaint does not seek temporary relief in the form of suspension of recoupment, pending completion of the administrative appeals process with respect to the waiver request, like the situation in *Family Rehab*. Instead, the amended complaint seeks essentially review and reversal of the reconsideration denial of Plaintiff's waiver request, relief that is entirely substantive and administrative in nature. *But see Lake County Rehab. Ctr., Inc. v. Shalala*, 854 F. Supp. 1329, 1336 (N.D. Ind. 1994) (finding ultra vires claims, with attendant request for injunctive relief, were collateral under *Eldridge* because "the issue before the Court solely addresse[d] a question of law regarding the scope of the Secretary's power," not "the merits of the Secretary's decision to terminate Plaintiff's provider agreement."). Furthermore, to provide the relief sought by Plaintiff, this Court would necessarily have to "delve into the statute and regulations . . . [and] make independent judgments as to . . . [her] eligibility under . . . [the] statute" to a waiver of recoupment. *See Family Rehab.* at 503.[19] Indeed,

---

[19] To receive a waiver of recoupment of an overpayment, the beneficiary must satisfy two prongs of the agency's waiver test: (1) that they are without fault and (2) that recovery of the overpayment would defeat the purpose of the Social Security Act or be against equity and good conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506(a); Program Operations Manual System (POMS) GN 02250.001.

Plaintiff argues extensively in her amended complaint and her brief that she is entitled to a waiver under § 404(b) of the Act because she was not at fault and her financial situation warrants waiver.[20]

*Califano v. Yamasaki,* 442 U.S. 682 (1979), enforces the conclusion Plaintiff's due process and putative ultra vires claims are not collateral; therefore, her reliance on this authority is quite misplaced. Plaintiff advises the Court should exercise jurisdiction over her claims simply because the Supreme Court exercised jurisdiction over Social Security claimants' due process claims in *Yamasaki*. Pl.'s Br. 18. *Yamasaki* involved recoupment of overpayment of benefits following certain claimants' requests for waiver.[21] And while Plaintiff is correct her case presents a similar fact pattern, she forgets in some instances in her brief she received exactly the process the Supreme Court found due in that case, *a personal conference*.[22] Interestingly, though, Plaintiff fails to acknowledge *why* the Supreme Court found jurisdiction was available under § 405(g) in that case. *Id.* at 698. Instead, her brief merely offers a mash-up of the jurisdictional

---

[20] In her brief Plaintiff argues she "responded to both prongs of § 404(b)" and "provided evidence why she should not have to pay the overpayment" and that "[t]his Court should find that Plaintiff met both prongs." Pl.'s Br. 23.

[21] In *Yamasaki* the merits question was "whether making the decision by regional office review of the written waiver request [was] sufficient to protect the recipient's right not to be subjected to an improper recoupment." 442 U.S. at 695. The Court of Appeals for the Ninth Circuit had answered that question in the negative, and the Supreme Court agreed "that an opportunity for a pre-recoupment oral hearing [was] required when a recipient requests waiver under § 204(b)." *Id.* at 697. Ultimately, the Supreme Court approved of the SSA's change in procedures—in response to district court injunctive orders—which included, "beginning with calendar year 1977 . . . 'a short personal conference with an impartial employee of the Social Security Administration at which time the recipient [could] present[] testimony and evidence and cross-examine[] witnesses, and the administrative employee [could] question[] the recipient.'" *Id.* (citation omitted).

[22] In her brief—and quite contrary to the allegations of the amended complaint—Plaintiff erroneously insists *Yamasaki* supports her contention she was entitled to, but "did not receive[,] an opportunity for an oral hearing before recoupment began." Pl.'s Br. 17. As stated above, the Supreme Court held in that case that the "personal conference" procedure that had been adopted by the agency while the litigation was pending satisfied the "oral hearing" requirement. *See Yamasaki* at 697. Plaintiff's personal conference was conducted on or about February 8, 2019, and there had been no recoupment of her benefits before this date. Amended Compl. ¶¶ 19-24.

issue, the merits of her due process and ultra vires claims, and the merits of her claim to entitlement of waiver of the overpayment. *See, e.g.,* Pl.'s Br. 13.

*Yamasaki* was a procedural due process case, and the relief sought in that case was mainly injunctive in nature. Specifically, the relief sought by the claimants in *Yamasaki* included a declaration that the agency's procedures were unconstitutional and an injunction requiring an oral hearing and sufficient notice, i.e., due process, prior to recoupment. 422 U.S. at 688-89. Hence, the constitutional claim was indeed collateral to the benefits claim. In this case, however, the relief Plaintiff seeks is purely substantive. Though her due process claim sounds procedural to the extent she claims Defendants "blocked" her ability to complete the administrative review process, for example, Plaintiff clearly seeks a reversal of the waiver of recoupment decision. Indeed, at no point has she asked the Court to direct the agency to hold an ALJ hearing and/or stay or reverse recoupment pending such hearing. Instead, the amended complaint asks the Court to "set aside" the overpayment recovery. And, though she also seeks an award of damages against defendants, there is no legal basis for same. *See Chilicky*, *supra*. Therefore, Plaintiff's due process and putative ultra vires claims are "inextricably intertwined" with, and not collateral to, the underlying substantive claim for waiver of recoupment of her disability benefits. *Cf. Bowen*, 476 U.S. at 484-85 (explaining it would be inappropriate to mechanically apply the *Eldridge* factors to grant waiver in a case where "a claimant sues in district court, alleging mere deviation from the applicable regulations in his particular administrative proceeding" because "such individual errors are fully

correctable upon subsequent administrative review since the claimant on appeal will alert the agency to the alleged deviation").[23]

Nor does Plaintiff present a "colorable" claim that erroneous recoupment will "damage [her] in a way not recompensable through retroactive payments." *Eldridge,* 424 U.S. at 331. Again, in her brief Plaintiff concedes there is no danger of future harm but insists she meets this aspect of the *Eldridge* inquiry because "the damage has [already] been done." Pl.'s Br. 10. It is the undersigned's view, however, that Plaintiff does not meet this part of the *Eldridge* test because her claim of entitlement to a waiver of recoupment of benefits has already been granted by the agency, and there is no basis for any other type of recovery in view of the holding in *Chilicky. Cf. Edwards v. Burwell*, 657 Fed. App'x 242, 245 (5th Cir. 2016) (upholding finding of lack of subject-matter jurisdiction and that physician's claim for money damages for loss of medical practice during the agency review process without a basis because most or all denials of his Medicare claims were reversed during the agency administrative review process). And even if the claim were not essentially moot, the "colorable" claim of injury factor does not contemplate past harm. *Chambers*, 2020 WL 5099829 at *7 ("To meet the irreparability requirement for waiver, the claimant must show that denial of relief will cause a harm; it does not account for past injuries.") (citation omitted). Therefore, judicial waiver of the exhaustion

---

[23] Even assuming, arguendo, any putative ultra vires claim for money damages may be separated from any claim for entitlement to waiver of recoupment and, therefore, is not the type of claim that is properly channeled by § 405(h) through § 405(g), Plaintiff has not shown a separate basis upon which this Court may exercise subject-matter jurisdiction over such a claim. *See In re Benjamin*, 932 F.3d at 300-302 (pointing out that § 405(h) channels only certain types of claims through § 405(g) and instructing that a "claim for money because the SSA failed to comply with its own regulations in recouping [an] overpayment" would not "be channeled by § 405(h)'s second sentence into § 405(g)"). *See also Becker v. Berryhill*, 772 F. App'x 215 (5th Cir. 2019) (explaining because plaintiff could not rely on § 405(g) to challenge later decision to temporarily suspend his benefits, "he would need an independent source of jurisdiction").

requirement under *Eldridge* is inappropriate and the case should be dismissed for lack of subject-matter jurisdiction.

Alternatively, § 405(g) requires a determination adverse to the claimant, *see Marsaw v. Thompson*, 133 Fed. App'x 946, 948 (5th Cir. 2005) (*Marsaw II*) (citing *Salfi*, 422 U.S. at 758 n.6), and Plaintiff has now received a reversal of the denial of her waiver request and has made no supplemental claim that reimbursement of the recouped benefits is not forthcoming. *Marsaw II*, 133 Fed. App'x at 948. Therefore, Plaintiff's due process and ultra vires claims are moot. *Id.* (citing *Chilicky*, 487 U.S. at 428, 108 S. Ct. at 2470); *Edwards v. Burwell*, 657 Fed. App'x 242, 245 (5th Cir. 2016). *Cf. Becker v. Saul*, 2020 WL 4384205, at *2-3 (W.D. Tex. July 30, 2020) (noting the court's continuing obligation to examine its jurisdiction and finding case moot because "intervening circumstances . . . [had] fully restored . . . [the claimant's] entitlement to benefits, and he had been reimbursed for benefits lost during period in question when they were suspended"). As such, all roads lead to a jurisdictional dead end as concerns Plaintiff's due process and putative ultra vires claims.

### 4. Federal Tort Claims Act ("FTCA")

In the amended complaint Plaintiff also asserts the Court has jurisdiction under "28 U.S. Code § 2675,[24] after failure of the federal agency to make final disposition within six months" and claims:

---

[24] This section of the FTCA provides in relevant part:
> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a).

> Additionally, after Tamarra blocked the first ALJ hearing request on Coreen's claim that she is not responsible for the overpayment, more than six months passed. After six months passed, the decision to not waive the overpayment was deemed a final denial. Therefore, Coreen could seek judicial review.

Amended Compl. ¶¶ 53, 62. Plaintiff's response brief, on the other hand, is a little less clear. For example, Plaintiff argues both that Defendants' actions were ultra vires and essentially their own and that the FTCA—which Plaintiff acknowledges requires as essential elements, *inter alia*, that the claims be "against the United States" for acts of employees "while acting within the scope of [their] office or employment"—provides the substantive basis for an award of monetary damages for her intentional infliction of emotional distress, fraudulent misrepresentation, and bad faith claims. Pl.'s Br. 25-26.

To the extent Plaintiff contends the Court may exercise jurisdiction over her due process and putative ultra vires claims under the FTCA, her position is untenable. As discussed thoroughly above, these claims arise under § 405(g) and, therefore, are expressly barred under the FTCA by § 405(h).

## B. Counts Two, Three, and Four of the Amended Complaint, Intentional Infliction of Emotional Distress, Fraudulent Misrepresentation, and Bad Faith

"In the FTCA, Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 128 S. Ct. 831, 169 L. Ed. 2d 680 (2008); *see also* 28 U.S.C. §§ 1346(b)(1), 2671–2680. The FTCA shields federal officers from official capacity suits because these types of suits are actually against the government. *See Smart v. Holder*, No. 09–50796, 2010 WL 759164, at \*2 (5th Cir. Mar. 5, 2010) (citing *Boehms v. Crowell*, 139 F.3d 452, 462–63 (5th Cir. 1998); *S. Sog, Inc. v. Roland*, 644 F.2d 376, 380 (5th Cir. Unit A May 1981)).

Section 1346(b) of the FTCA grants federal courts jurisdiction over claims that are: (1) against the United States; (2) for money damages; (3) for injury or loss of property, or personal injury or death; (4) caused by the negligent or wrongful act or omission of any employee of the federal government; (5) while acting within the scope of his or her employment; and (6) under circumstances where the United States, if a private person, would be liable to the plaintiff in accordance with the state law where the act or omission occurred. 28 U.S.C. § 1346(b); *see FDIC*, 510 U.S. at 477-78. "A claim comes within this jurisdictional grant—and thus is "cognizable" under § 1346(b)—if it is actionable under § 1346(b). And a claim is actionable under § 1346(b) if it alleges the six elements outlined above." *FDIC*, 510 U.S. at 477. Consequently, the only proper defendant in an FTCA action is the United States, and "an FTCA claim against a federal agency or employee as opposed to the United States itself must be dismissed for want of jurisdiction." *Galvin v. OSHA*, 860 F.2d 181, 183 (5th Cir. 1988) (citations omitted).

Plaintiff alleges that Defendants intentionally inflicted emotional distress on her by "taking unprecedented steps to block . . . [her] from a hearing by and ALJ," among other things, and claims she is entitled, "under Mississippi law through U.S. Code § 1346," to damages and a decision setting aside the overpayment recovery. Amended Compl. ¶¶ 64-72. Plaintiff's final counts are for fraudulent misrepresentation and bad faith "under Mississippi Law through U.S. Code §1346," and she seeks similar relief. *Id.* at ¶¶ 73-85. Plaintiff has named the Commissioner of Social Security[25] and agency employees, in their individual capacities, as defendants to this lawsuit. Of course, neither the agency nor any individual defendant is a proper defendant to

---

[25] Again, in her response brief Plaintiff contends her suit is "against the United States through its agency, SSA." Pl.'s Br. 26.

Plaintiff's FTCA claims. *See Galvin*, 860 F.2d at 183. Accordingly, Plaintiff's FTCA claims against the individual defendants and the agency should be dismissed for lack of subject-matter jurisdiction. *Id. See also Ogbolu v. United States Immigration & Customs Enforcement*, No. H-06-0115, 2006 WL 3152694 at *3 (S.D. Tex. Nov. 1, 2006) (dismissing plaintiff's FTCA claims against ICE for lack of jurisdiction).

 Furthermore, all Plaintiff's tort claims arise under the Social Security Act, and courts have routinely rejected attempts like Plaintiff's to recast her administrative claim in terms of tort claims for damages under the FTCA as such is expressly barred by § 405(h). *See Raczkowski v. U.S.,* 138 Fed. App'x 174, 175-76 (11th Cir. 2005) ("[B]ecause Raczkowski's claim is one arising under the Act, § 405(h) bars him from asserting jurisdiction under the FTCA, and the district court did not err when it dismissed his complaint for lack of subject matter jurisdiction."); *Midland Psychiatric Assoc., Inc. v. U.S.,* 145 F.3d 1000, 1005 (8th Cir. 1998) (holding FTCA negligent supervision claim against U.S. arose under the Medicare Act and was, therefore, jurisdictionally barred by § 405(h)); *Jarrett v. U.S.,* 874 F.2d 201, 205 (4th Cir. 1989) ("*Chilicky* answers plaintiff's due process claim and its reasoning disposes of the FTCA claim. . . . Congress . . . did not intend to allow a claim under the . . . [FTCA] for 'improper and wrongful' discontinuance of benefits."); *Fabian v. Colvin*, No. SA-14-CV-141-XR, 2014 WL 3952803 at *3 (W.D. Tex. Aug. 13, 2014) ("[E]ven though 28 U.S.C. § 1346 (i.e. the Federal Tort Claims Act or FTCA) waives sovereign immunity for certain tort actions against the federal government, Plaintiff is barred by statute from recasting her claim against the SSA as an intentional tort."); *Monet v. Mathews*, 535 F. Supp. 2d 132, 137 (D.C. Cir. 2008) (rejecting attempt to bring intentional tort claim against SSA under FTCA).

Finally, even assuming any of Plaintiff's claims may be construed as a suit against the United States,[26] and are not jurisdictionally barred by § 405(h), the undersigned agrees with Defendants Plaintiff has not shown she exhausted her administrative remedies prior to filing suit. *See McNeil v. United States*, 508 U.S. 106, 112-13 (1993); *Price v. United States*, 69 F.3d 46, 54 (5th Cir. 1995). Absent compliance with the statute's exhaustion requirement, a federal district court is without jurisdiction to consider any claims under the FTCA. *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222-23 (5th Cir. 1989).

Here, while Plaintiff does allege with respect to her request for waiver of recoupment claim (the administrative claim) the agency failed to act within six months, she has failed to rebut Defendants' evidence that she neither presented her tort claims to the agency nor exhausted them prior to filing suit. *See* Dell'Aglio Dec., attached to Defs.'s Reply Br. [24-1]. Because Plaintiff did not exhaust her tort claims prior to filing suit as required under § 2675(a), subject-matter jurisdiction over any FTCA claim against the United States is lacking.

## Recommendation

For the foregoing reasons, it is my recommendation that Defendants' motion be granted and Plaintiff's complaint be dismissed without prejudice for lack of subject-matter jurisdiction.

The parties are referred to L. U. Civ. R. 72(a)(3) for the applicable procedure in the event any party desires to file objections to the findings and recommendations herein contained. The parties are warned that any such objections are required to be in writing and must be filed within fourteen (14) days of this date. Failure to timely file written objections to the proposed findings,

---

[26] Under the FTCA, claims brought against an employee of the federal government for tortious conduct that occurred in the employee's official capacity are "really suit(s) against the government" and the United States is the proper party. *Smart v. Holder*, No. 09–50796, 2010 WL 759164, at *2 (5th Cir. Mar. 5, 2010) (citing *Boehms*, 139 F.3d at 462–63). Accordingly, to the extent Plaintiff's claims against the Commissioner may be construed as official capacity claims, they are essentially claims against the government.

conclusions and recommendations contained in this report will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Respectfully submitted this 13th day of January, 2021.


**/s/ Jane M. Virden**
**U.S. Magistrate Judge**